UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH C. SUN,

                              Plaintiff,

      v.

OFFICER TJEPKEMA et al.,

                              Defendants.

**DECISION AND ORDER**
09-CV-35A

_____

I.     **INTRODUCTION**

Pending before the Court is a motion by defendants Caroline Tjepkema, Kristofer Siering, Michael Bauer, Sean Halpin, Richard Vanstone, Patrick Mangan, Jane Doe, and Joseph Meggo, all of whom are agents of the United States Customs and Border Protection agency ("CBP"), for dismissal of plaintiff's *pro se* complaint under Rule 12 of the Federal Rules of Civil Procedure ("FRCP"). Defendants assert that they were not served properly. As for substantive issues, defendants assert that they cannot be sued in an official capacity because of sovereign immunity and cannot be sued in an individual capacity because of qualified immunity. Defendants claim entitlement to qualified immunity specifically because plaintiff has alleged nothing more than a secondary border inspection triggered by his admitted failure to declare certain goods at the Canadian–U.S. border that turned out to be prohibited. Although the docket

indicates that plaintiff received a copy of defendants' motion papers, he submitted no response to the pending motion. The Court has deemed the pending motion submitted on papers pursuant to FRCP 78(b). For the reasons below, the Court will deny the motion to the extent that it raises procedural challenges but otherwise will grant the motion and dismiss plaintiff's complaint.

II. **BACKGROUND**

This case concerns plaintiff's allegations that defendants subjected him to a prolonged, unfair, and racially discriminatory inspection when crossing the Rainbow Bridge from Canada into the United States. According to the complaint, plaintiff crossed the Rainbow Bridge with his family on October 29, 2008 after visiting his mother in Scarborough, Ontario. Plaintiff, who is of Chinese ancestry, was driving a car with South Carolina license plates. During primary inspection at the customs booth, defendants asked plaintiff several questions including where he had been in Canada and whether he had any alcohol in his car. Plaintiff responded that he had been in Scarborough and was on his way back to South Carolina. Plaintiff responded further that the car contained "several bottles of Cognac and Scotch Whiskey, and I was bringing them with me because I had more room in the trunk this time." (Dkt. No. 1 at 7 ¶ 3.) Defendants then asked plaintiff whether he had any fruits or vegetables in the car, to which plaintiff responded in the affirmative. At that point, defendants directed plaintiff to the secondary inspection area. When one of the defendants asked plaintiff more

2

questions about what fruits and vegetables were in the car, plaintiff "told her clearly that I did not know everything in the car because I did not pack the vehicle and that there may be other fruits and vegetables we bought in Toronto in small quantities which we did not finish eating . . . ." (*Id.* ¶ 4.) Plaintiff's response prompted defendants to direct plaintiff and his family inside a nearby building while they conducted a secondary inspection of his car.

Two aspects of the secondary inspection upset plaintiff. First, plaintiff felt upset that he had to undergo a secondary inspection at all. While he was at the customs booth for primary inspection, plaintiff "saw passengers in other vehicles, one peeling an orange and another eating an apple. Both of those vehicles passed the booths without detention after brief inquiry. Those vehicles were occupied by Caucasians." (*Id.* ¶ 3.) Second, plaintiff felt upset at what he perceived to be rough or improper treatment of the personal items that he had in his car. At one point, plaintiff exited the building where he was located to take pictures of the secondary inspection using his cell phone. When defendants saw plaintiff taking pictures, they seized his cell phone and ordered him back into the building.

Upon completion of the secondary inspection, defendants informed plaintiff that they found several concealed and prohibited items, including fruit and frozen lamb chops. Defendants allegedly told plaintiff that he had to pay them $300 "or it would be a long time before we could leave." (*Id.* at 8 ¶ 7.) Plaintiff told

defendants that he did not have that money and demanded to know the basis for such a requirement. Approximately one hour later, defendants returned plaintiff's driver's license and family passports, issued a Notice of Alleged Violation, and let him go. Defendants also returned plaintiff's cell phone, although the pictures that plaintiff took were deleted along with unrelated personal data. From the time of the bridge crossing at approximately noon, to the final release at approximately 4:00 p.m., about four hours passed during the events that plaintiff described in his complaint.

Plaintiff filed his complaint on January 12, 2009, asserting three claims against all defendants of violations of 42 U.S.C. § 1983.[1] In his first claim, plaintiff asserts discrimination based on race and national origin in that defendants subjected him to an unnecessary and prolonged detention that Caucasians do not have to experience. In support of his first claim, plaintiff notes that he had a similar incident in Niagara Falls three years before the incident in question, and that Chinese friends and relatives of his also have complained about customs officers in Niagara Falls. In his second claim, plaintiff asserts an illegal search and seizure of his cell phone and an illegal deletion of personal data that he had on that phone. In support of his second claim, plaintiff notes that there was no

---

[1] Technically, plaintiff never cites Section 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Mindful that plaintiff is *pro se*, however, the Court will construe this case as a Section 1983 case, given that defendants are federal employees and that plaintiff does assert violations of his civil rights.

justification for the seizure of the cell phone if it occurred only in response to the pictures that he took of the secondary inspection. In his third claim, plaintiff asserts a due-process violation in that "defendants conspired to cover up their wrongful and unconstitutional activities by rendering a mockery investigation." (Dkt. No. 1 at 3.)

In lieu of answering the complaint, defendants filed a motion to dismiss it on May 20, 2010. In their motion, defendants raise three arguments for dismissal. First, defendants argue under FRCP 12(b)(5) that plaintiff never served them properly because he never served the United States Attorney in addition to serving them individually. Second, defendants argue under FRCP 12(b)(1) that this Court lacks subject-matter jurisdiction over the case to the extent that plaintiff is suing them in their official capacities, since sovereign immunity would bar plaintiff's claims. Third, defendants argue under FRCP 12(b)(6) that qualified immunity bars any claims against them in their individual capacities because the primary and secondary inspections occurred properly. The docket for this case indicates that the Clerk of the Court mailed copies of defendants' motion papers and this Court's text order setting a briefing schedule (Dkt. No. 22) to plaintiff's South Carolina address. The Clerk's mailings never returned as undeliverable. Under the briefing schedule for the pending motion, the Court permitted plaintiff to file responding papers until June 11, 2010, but plaintiff never filed a response.

5

## III. DISCUSSION

### A. *Standard of Review for* Pro Se *Litigants*

"As an initial matter, the Court is mindful that Plaintiff[] [is] proceeding *pro se*, and that [his] submissions should thus be held to less stringent standards than formal pleadings drafted by lawyers. Moreover, when plaintiffs bring a case *pro se*, the Court must construe their pleadings liberally and should interpret them to raise the strongest arguments that they suggest. Still, *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d 557, 559 (S.D.N.Y. 2008) (internal quotation marks and citations omitted). The Court will assess the pending motion and plaintiff's original pleadings—given the lack of a response to the pending motion—in this context.

### B. *Defendants' Motions to Dismiss Generally*

"Where a Court is asked to rule on a combination of Rule 12 defenses, it will pass on the jurisdictional issues before considering whether a claim is stated in the complaint." *A.C. ex rel. Collichio v. Brockport Cent. Sch. Dist.*, No. 08-CV-6443, 2009 WL 1044558, at *2 (W.D.N.Y. Apr. 16, 2009) (Telesca, *J.*) (internal quotation marks and citations omitted). Here, two of defendants' three arguments for dismissal are jurisdictional in nature—the FRCP 12(b)(5) argument concerning service of process and the FRCP 12(b)(1) argument concerning subject-matter jurisdiction. The Court would lack authority to address the

6

sufficiency of plaintiff's claims under FRCP 12(b)(6) if it lacks jurisdiction over the case. Accordingly, the Court will address defendants' jurisdictional arguments first.

### C. *Service of Process (FRCP 12(b)(5))*

Plaintiff's complaint does not name any government agency and does not specify whether defendants are being sued individually, in their official capacities, or both. Because plaintiff is *pro se*, the Court will construe the complaint broadly to mean that defendants are being sued both officially and individually, and will assess compliance with service requirements accordingly.

"To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." FRCP 4(i)(3). With regard to the first step of serving the United States, "a party must . . . send a copy of [the summons and complaint] by registered or certified mail to the civil-process clerk at the United States attorney's office; [and] send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C." FRCP 4(i)(1)(A)(ii), 4(i)(1)(B).[2] Defendants have conceded that plaintiff served

---

[2] Compliance with FRCP 4(i)(1)(C) is not necessary because plaintiff appears not to be challenging an order of a nonparty agency or officer of the United States.

7

the United States Attorney for this District both by regular mail on July 23, 2009 and by certified mail on February 17, 2010.  Defendants have conceded also that plaintiffs served the Attorney General of the United States by certified mail on July 20, 2009.  With regard to the second step of serving the individual defendants in this case, FRCP 4(e) states that they "may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  FRCP 4(e)(1).  Under New York law, and "[a]s an alternative to the methods of personal service authorized by section 307, 308, 310, 311 or 312 of this article, a summons and complaint . . . may be served by the plaintiff or any other person by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint . . . together with two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender."  N.Y. CPLR 312-a(a).  The record indicates that plaintiff served each individual defendant with the assistance of the United States Marshals Service.   The Marshals Service served each defendant by certified mail, return receipt requested, and then completed a USM-285 Process Receipt and Return Form for each defendant.  By serving defendants in this way, plaintiff fulfilled the requirements of CPLR 312-a that defendants receive the summons and complaint by a mail service at least as

8

expeditious as first-class mail and that defendants themselves confirm receipt in writing. Under these circumstances, any deviation from the verbatim requirements of CPLR 312-a is too insignificant to have any implications for defendants' due-process rights. Defendants thus have received adequate service of process, and the Court rejects their FRCP 12(b)(5) argument accordingly.

> D. *Sovereign Immunity (FRCP Rule 12(b)(1))*

"In a *Bivens* action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action. Such an action, however, must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (citations omitted). Here, to the extent that plaintiff intended to sue defendants in their official capacities, the United States never consented to being sued. The Court thus dismisses plaintiff's complaint as against all defendants to the extent that it could be interpreted as naming them in their official capacities.

9

**E.	*Qualified Immunity (FRCP 12(b)(6))***

The Court next will assess defendants' argument for FRCP 12(b)(6) dismissal on qualified immunity grounds, "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "To determine whether a right is clearly established, we look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful. Even if this or other circuit courts have not explicitly held a law or course of conduct to be unconstitutional, the unconstitutionality of that law or course of conduct will nonetheless be treated as clearly established if decisions by this or other courts clearly foreshadow a particular ruling on the issue, even if those decisions come from courts in other circuits." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (internal quotation marks and citations omitted). In the analytical framework set forth above, defendants in this case would be entitled to qualified immunity as long as they

10

can establish that their conduct during the primary and secondary inspections of plaintiff and his car did not violate any clearly established rights that plaintiff would have had during those inspections. The Court will review the standards governing border searches accordingly.

"The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border. Time and again, we have stated that searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border. Congress, since the beginning of our Government, has granted the Executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country." *U.S. v. Flores-Montano*, 541 U.S. 149, 152–53 (2004) (internal quotation marks and citations omitted); *see also id.* at 154 ("[O]n many occasions, we have noted that the expectation of privacy is less at the border than it is in the interior. We have long recognized that automobiles seeking entry into this country may be searched.") (citations omitted); *Carroll v. U.S.*, 267 U.S. 132, 154 (1925) ("Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may

11

be lawfully brought in."). Here, the linchpin holding together all of the contentions in the complaint is plaintiff's assertion that defendants had no legitimate reason either to detain him and his family for four hours or to seize his cell phone and delete data on it after he took pictures of the secondary inspection. As United States Supreme Court case law has made clear for decades, however, defendants did not need a reason for the primary and secondary inspections. Plaintiff was crossing an international border. Defendants had the right to ensure that plaintiff was not carrying any contraband with him. Defendants had the right also to ensure that pictures of officers and secondary inspection facilities would not be disseminated in any way that could compromise the secondary inspection process.

Additionally, plaintiff's assertion ignores the factual circumstances that likely forced defendants to conduct the secondary inspection. While presenting himself in a car bearing license plates from a state hundreds of miles away, plaintiff declared that he had several bottles of liquor with him that may or may not have required the payment of duties. Plaintiff declared that the car also contained agricultural items whose importation, from defendants' first impression at the booth, may or may not have been allowed. Finally, plaintiff told defendants at the secondary inspection area that he did not pack the car that he was driving and that he could not rule out the presence of other items whose importation may or may not have been allowed. When defendants inspected plaintiff's car for any

12

other items, they found concealed fruits and frozen lamb chops that were not permitted across the border. Plaintiff has not set forth any information suggesting that Caucasian drivers or any other drivers at the border were driving cars containing concealed items of which they were not even aware.

In short, then, plaintiff is complaining that, because he is Chinese, he was not allowed to cross the Canadian–U.S. border with a car containing concealed and unidentified contraband, and that he was not allowed to take pictures of the agents seizing the contraband or of the procedures used to inspect for and to seize that contraband. Statutory and case law are clear that plaintiff had no right to engage in these activities and that defendants were acting well within their discretion to interrupt these activities. Under these circumstances, defendants are entitled to qualified immunity against all of plaintiff's contentions. The Court will dismiss the complaint in its entirety as against all defendants because plaintiff has not alleged any cognizable claim that would survive qualified immunity and because any amendment of the complaint in this context would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile.").

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies defendants' motion to dismiss (Dkt. No. 19) on the grounds of service of process but grants it on the grounds of qualified immunity and, accordingly, dismisses the complaint in its entirety. The Clerk of the Court is directed to close this case.

The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and thus denies leave to appeal as a poor person. *Coppedge v. U.S.*, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk of the Court within thirty (30) days of the entry of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: October 15, 2010